1  TRACY L. WILKISON
   Attorney for the United States,
2  Acting Under Authority Conferred By 28 U.S.C. § 515
   SCOTT M. GARRINGER
3  Assistant United States Attorney
   Deputy Chief, National Security Division
4  MELISSA MILLS (Cal. Bar No. 248529)
   FRANCES LEWIS (Cal. Bar No. 291055)
5  Assistant United States Attorneys
   Public Corruption and Civil Rights Section
6  DIANA KWOK (Cal. Bar No. 246366)
   Assistant United States Attorney
7  Environmental and Community Safety Crimes Section
        1300 United States Courthouse
8       312 North Spring Street
        Los Angeles, California 90012
9       Telephone: (213) 894-6529
        Facsimile: (213) 894-0141
10      E-mail:    diana.kwok@usdoj.gov

11 Attorneys for Party in Interest
   UNITED STATES OF AMERICA

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re: | Case No. 2:20-BK-06724-PS |
|---|---|
| PAUL OLIVA PARADIS, | Chapter 11 |
| Debtor. | <u>GOVERNMENT'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES</u> |

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Diana Kwok, hereby files a Motion to Stay the Proceedings in this matter.

This Motion is based upon the attached memorandum of points and

///

///

| | |
|---|---|
| 1 | authorities, the files and records in this case, and such further |
| 2 | evidence and argument as the Court may permit. |

Dated: July 27, 2020            Respectfully submitted,

TRACY L. WILKISON
First Assistant United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

      /s/
DIANA KWOK
Assistant United States Attorney

Attorneys for Party in Interest
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

I.   INTRODUCTION....................................................1

II.  SUMMARY OF PUBLICLY AVAILABLE RELEVANT BACKGROUND...............2

     A.   Paradis's Involvement in Litigation Relating to the
          LADWP Billing System.......................................3

     B.   LADWP's Public Contracts with Paradis......................4

III. ARGUMENT........................................................5

     A.   This Court has the power to stay the instant
          bankruptcy cases in the interest of justice................5

     B.   The pending criminal investigation and the instant
          bankruptcy cases share multiple areas of overlap...........7

     C.   Paradis's creditors do not have a unique interest in
          proceeding expeditiously...................................9

     D.   If a stay is not granted, then Paradis will likely
          have to choose between invoking his Fifth Amendment
          privilege against self-incrimination, and potentially
          losing the protections of bankruptcy.......................9

     E.   A stay would allow this Court to avoid extensive
          delays and protracted litigation resulting from
          debtor's continued assertion of privilege in response
          to the creditors' questioning.............................11

     F.   A stay of the proceedings is critical for the
          preservation of the integrity of the government's
          ongoing criminal investigation............................11

     G.   The public has a greater interest in seeing that any
          criminal activity is expediently investigated than in
          advancing the instant bankruptcy cases....................13

IV.  CONCLUSION.....................................................13

||||||
|---|---|---|---|---|
| 1 | | **TABLE OF AUTHORITIES** | | |
| 2 | DESCRIPTION | | | PAGE |

**FEDERAL CASES**

Ashworth v. Albers Med., Inc.
    229 F.R.D. 527 (S.D. W. Va. 2005)..............................12

Baker v. SeaWorld Entm't, Inc.
    2018 U.S. Dist. LEXIS 60958, 2018 WL 1726534 (S.D. Cal.
    Apr. 10, 2018)..................................................13

Federal Sav. & Loan Ins. Corp. v. Molinaro
    889 F.2d 899 (9th Cir. 1989).....................................6

In re SK Foods, L.P., 2010 U.S. Dist. LEXIS 136188 (E.D. Cal.
    Dec. 9, 2010)....................................................6

In re Zinnel
    2013 U.S. Dist. LEXIS 46114, 2013 WL 128439 (E.D. Cal.
    March 28, 2013)..................................................6

Landis v. North American Co.
    299 U.S. 248, 254 (1936).........................................6

United States v. Kordel
    397 U.S. 1 (1970)................................................6

Walsh Sec. v. Cristo Prop. Mgmt.
    7 F. Supp. 2d 523 (D.N.J. 1998)............................10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On June 3, 2020, Paul Paradis ("Paradis") filed two voluntary bankruptcy petitions – one for himself, under Chapter 11, Subchapter V (Case No. 2:20-BK-06724-PS), and a second, as the managing member of Ardent Cyber Solutions LLC (Case No. 2:20-BK-06724-PS).

Soon thereafter, on July 7, 2020, Paradis attended the 341(a) meeting of creditors in both cases, during which counsel for the City of Los Angeles ("the City") reportedly asked him a number of probing questions in a stated effort to establish its claims against Paradis and Ardent. Because Paradis invoked his Fifth Amendment rights and refused to answer many of the City's questions, the 341(a) meetings were continued to July 30, 2020. In the interim, the government received information about the ongoing proceedings from multiple sources, including the Trustee's office and the City.

As has been publicly reported, the United States Attorney's Office in the Central District of California and the Federal Bureau of Investigation are conducting a criminal investigation into matters related to Paradis's work for the City of Los Angeles, including civil litigation involving the billing system of the Los Angeles Department of Water and Power ("LADWP"), certain LADWP contracts related to Paradis, and other matters. One focus of this investigation is whether a large segment of City ratepayers was defrauded in connection with these matters.

Notwithstanding the public reporting on the government's investigation and the underlying civil litigation, many of the facts known to the government as part of its investigation remain sensitive and confidential. But if Paradis is required to answer questions

from his creditors that relate to the matters under investigation, the government believes its investigation will be severely compromised.  Given the overlap between the federal criminal investigation and the stated informational needs of the City to establish its claims in bankruptcy, Paradis's responses to the City's inquiries in a 341(a) meeting may reveal sensitive facts that would allow other criminal subjects to potentially change their testimony/statements, seek to interfere with witnesses, alter evidence, or otherwise undermine the integrity of the investigation.

Accordingly, as discussed further below, the government submits that a stay of both bankruptcy cases for the duration of the pending criminal investigation is warranted in the interest of justice, in order to preserve the integrity and confidentiality of the government's investigation.  To ensure that a stay is only in place for as long as necessary, the government would agree to provide a status report to the Court in 180 days, to address whether it believes a continued stay remains necessary.

**II.  SUMMARY OF PUBLICLY AVAILABLE RELEVANT BACKGROUND**

The following information in this section is compiled exclusively from public court filings and published news articles. The government sets forth this summary for the sole purpose of providing this Court with sufficient information to consider this motion.  If further details are necessary to that purpose, the government respectfully requests that the Court advise what additional information would be helpful.

**A. Paradis's Involvement in Litigation Relating to the LADWP Billing System**

In September 2013, LADWP implemented a new customer care and billing system pursuant to a contract with PriceWaterhouseCoopers ("PwC"). Shortly thereafter, LADWP ratepayers who believed they had been overbilled began to file class actions against LADWP and the City for damages.

One such ratepayer, Antwon Jones, filed his class-action lawsuit against the City of Los Angeles on April 1, 2015 (the "Jones litigation"). In a subsequent deposition, Jones testified that he believed his attorney was Paul Paradis,[1] who Jones had retained in December 2014 in connection with his overbilling claims. But Paradis was not listed as his attorney of record on the complaint filed in April 2015. Instead, an Ohio attorney named Jack Landskroner appeared as class counsel for Jones, and Paradis was the attorney of record for the City in its own lawsuit against PwC, which was filed on March 6, 2015.

In March 2019, after numerous protracted discovery disputes in the City's action against PwC, PwC alleged that Paradis and the City had worked together to select Landskroner to handle the Jones litigation, in an effort to quickly settle the class action. In

---

[1] According to a transcript of a status hearing on July 14, 2020, a representative for the U.S. Trustee advised the Court that Paradis was a witness in this criminal investigation. A reporter thereafter filed a news article on that hearing interpreting this comment to infer that Paradis was cooperating with the federal criminal investigation. The government makes no representation as to any purported cooperation by Paradis or any other individual. Both cooperation and lack of cooperation by individual witnesses in an ongoing criminal investigation is a highly sensitive matter, and to the extent that any such information may be relevant to the Court's determination of these issues, the government requests the opportunity to address the Court in camera.

particular, PwC alleged that Landskroner and his law firm ultimately received about $10.1 million in attorney's fees from the Jones settlement, despite not having sought any discovery from the City, not taking or defending any depositions in the case, and having been given a draft of the class action complaint from Paradis. PwC also pointed out that a tentative settlement had been reached between the parties within 2.5 months of the class action being filed, and a preliminary settlement agreement was signed just a few weeks later.

On March 4, 2019, when the Court asked Landskroner during a hearing whether he had paid a referral fee to Paradis, Landskroner invoked his Fifth Amendment privilege against self-incrimination. Subsequently, when PwC deposed Paradis, Paradis also invoked the Fifth Amendment in response to the majority of questions asked of him.

**B.  LADWP's Public Contracts with Paradis**

Separately, and in the interim, Paradis was also engaged in a series of public transactions with the LADWP, wherein he, his law firm, and Aventador Utility Solutions LLC, were awarded multiple multi-million dollar contracts for remediation work associated with the Jones litigation. Specifically, in October 2015, LADWP publicly reported that it had awarded Paradis's law firm, Paradis Law Group, PLLC, a no-bid contract in the amount of $1.3 million for remediation of the utility's customer care and billing system; that contract was subsequently amended less than a year later for an additional $4.7 million. The following year, in June 2017, LADWP again publicly reported awarding Paradis another multi-million dollar contract from LADWP, but this time, it was a no-bid, $30 million contract for continuing remediation of the utility's customer care and billing

system, through an entity that Paradis had formed just three months earlier – Aventador Utility Solutions LLC. (Id. at 3, 13-14.)

According to news articles, Aventador had apparently planned to operate a "Cybergym" arena in downtown Los Angeles by the summer of 2019. But LADWP canceled Aventador's $30 million contract once PwC alleged that Paradis had been simultaneously representing both Antwon Jones in the class action litigation against LADWP, and the City in the related action against PwC. In April 2019, LADWP publicly awarded a cybersecurity contract to debtor Ardent Cyber Solutions, LLC, formerly known as Aventador Utility Solutions LLC, for "cybersecurity services."

As mentioned above, the United States is conducting an active criminal investigation into matters including the above allegations involving Paradis and Ardent, among others. Because the federal criminal investigation is sensitive, ongoing and contains confidential aspects, and at least one alleged creditor has indicated an intent to elicit Paradis's testimony about the above events in order to establish its claims, the government requests that this Court exercise its inherent power to stay the Paradis and Ardent bankruptcy cases, so as to protect the integrity of the government's investigation.

**III. ARGUMENT**

    **A. This Court has the power to stay the instant bankruptcy cases in the interest of justice**

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254

(1936). While the Constitution does not mandate the stay of civil proceedings in the face of parallel criminal proceedings, "a court may [nevertheless] decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action. . . ." SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (quoting United States v. Kordel, 397 U.S. 1, 12 n. 27 (1970)).

With respect to bankruptcy cases in particular, courts have found that a stay may be warranted where a bankruptcy case seriously implicates a debtor's Fifth Amendment rights. See, e.g., In re Zinnel, 2013 U.S. Dist. LEXIS 46114, 2013 WL 128439 (E.D. Cal. March 28, 2013) (granting stay of bankruptcy appeal where debtor was criminally accused of engaging in enterprise through which he allegedly obtained assets); In re SK Foods, L.P., 2010 U.S. Dist. LEXIS 136188 (E.D. Cal. Dec. 9, 2010); (reversing bankruptcy court's denial of stay proceedings in seven adversarial actions because bankruptcy litigation seriously implicated principal's privilege against self-incrimination); In re Marceca, 131 B.R. 774, 778 (Bankr. S.D.N.Y. 1991) (granting motion to stay adversary proceeding pending criminal investigation).

A determination of whether to stay a case is made on a case-by-case basis, depending on "the particular circumstances and competing interests involved in the case." Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). The Ninth Circuit has held that in making this decision, courts should consider the extent to which a defendant's Fifth Amendment rights are implicated, as well as the following factors:

(1) the interest of the plaintiffs in proceeding expeditiously
with this litigation or any particular aspect of it, and
the potential prejudice to plaintiffs of a delay;
(2) the burden which any particular aspect of the proceedings
may impose on defendants;
(3) the convenience of the court in the management of its
cases, and the efficient use of judicial resources;
(4) the interests of persons not parties to the civil
litigation; and
(5) the interest of the public in the pending civil and
criminal litigation.

Id. at 903.

Here, the balance of these factors mitigates in favor of a stay of both the Paradis and Ardent bankruptcy cases -- particularly given that Paradis has already invoked his Fifth Amendment privilege against self-incrimination, both during the recent 341(a) meetings and in his earlier civil deposition in the City's lawsuit against PwC.

**B. The pending criminal investigation and the instant bankruptcy cases share multiple areas of overlap**

As a threshold matter, there is a clear overlap between Paradis's and Ardent's bankruptcy cases and the pending criminal investigation, such that Paradis's Fifth Amendment rights will likely be implicated in any continued 341(a) meeting. During the 341(a) meetings held on July 7, 2020, the City reportedly asked Paradis why he invoked the Fifth Amendment during his deposition with PwC, and expressed particular interest in Aventador's and Ardent's activities before 2019. When Paradis refused to answer a number of the City's

questions, based on privilege or otherwise, the City made sure to bring the issue to the attention of the Court at the Chapter 11 status conference for Paradis's personal bankruptcy case on July 14, 2020:

> With regard to one other major issue, just to bring to Your Honor's attention something that came up at the 341(a) meeting of creditors in both the Ardent and Mr. Paradis' case, is Mr. Paradis' refusal to testify in both cases about anything related to Ardent prior to 2019 when it was known by a different name.
>
> . . .
>
> The reason why that's important, Ardent made $16.9 million in 2018 and has a significant business history that deserves to be at least explored because it is a primary asset of Mr. Paradis. And there's a lot of money going through that entity. So when we asked the questions related to Ardent, you know, what happened in 2018 type of issues, Mr. Paradis refused to answer.
>
> . . .
>
> [T]he response that we were getting from Mr. NewDelman was that Mr. Paradis . . . will likely plead the Fifth at the 341(a) meetings for himself personally and for Ardent as it relates to . . . Ardent issues prior to 2019.

(Transcript, 20-BK-06724-PS, 7/14/20, 17-18.) Given the City's statements at the most recent status conference, as well as the questions that the City posed to Paradis at the first 341(a) meeting of creditors, it is apparent that the City intends to pursue lines of inquiry involving Aventador and Ardent, and Paradis's related business activities. These lines of questioning, however, inherently conflict with the government's interest in maintaining the integrity of its ongoing criminal investigation.

Further, on July 20, 2020, CyberGym Control Ltd. and Strategic Cyber Holdings LLC also filed proofs of claim against Paradis and Ardent. The nature of these claims suggests that this alleged

8
Case 2:20-bk-06724-PS    Doc 48    Filed 07/30/20    Entered 07/30/20 16:34:38    Desc
Main Document    Page 12 of 17

creditor too may attempt to elicit testimony from Paradis that would compromise the integrity of the federal criminal investigation.

### C. Paradis's creditors do not have a unique interest in proceeding expeditiously

Here, as in any bankruptcy case, Paradis's and Ardent's creditors have a significant interest in seeing that any reorganization plan is submitted and approved in a timely manner. But given that the instant petitions were filed only last month, the proposed delay cannot be characterized as highly prejudicial. Moreover, given the likelihood that Paradis will continue to invoke the Fifth Amendment in response to questions raised by creditors about matters relating to the federal criminal investigation, these creditors would arguably benefit from a stay of the bankruptcy cases until the conclusion of the investigation, at which time more related facts are likely to have been uncovered by such investigation.

### D. If a stay is not granted, then Paradis will likely have to choose between invoking his Fifth Amendment privilege against self-incrimination, and potentially losing the protections of bankruptcy

In determining whether a stay is warranted, many courts have agreed that "the strongest case for deferring civil proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). This is because "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." Id. at 1376.

Even where no indictments have yet been returned, a pre-indictment stay may still be warranted if the government is conducting an active parallel criminal investigation. This is particularly the case where search warrants have been executed, subpoenas have been issued, and defendants have been notified that they are targets of the criminal investigation. Walsh Sec. v. Cristo Prop. Mgmt., 7 F. Supp. 2d 523, 527 (D.N.J. 1998); see also Amsave Credit Corp. v. Marceca, 131 B.R. 774 (S.D.N.Y. 1991) (granting pre-indictment stay because criminal investigation was "reaching a terminal phase that will likely result in the issuance of indictments against [the defendant] and possibly others involved in this case"). Here, the government's investigation has proceeded at a brisk pace since it began last year, and search warrants were executed as part of the case just one year ago.

If the bankruptcy cases are not stayed, then Paradis will likely be forced to choose between invoking his Fifth Amendment privilege against self-incrimination, and potentially losing the relief and protections of bankruptcy. As noted above, at least one alleged creditor has indicated its intent to continue probing about Aventador's activities, among other topics. The rights of creditors to pursue claims against Paradis and Ardent should be balanced against the right of the debtor to assert his constitutional rights (which would have the above-noted incidental benefits to the integrity of the federal criminal investigation) without foregoing the protections of bankruptcy. Accordingly, the government submits that this factor weighs heavily in favor of granting a stay.

**E. A stay would allow this Court to avoid extensive delays and protracted litigation resulting from debtor's continued assertion of privilege in response to the creditors' questioning**

While this Court has an overall interest in judicial efficiency with respect to managing its docket, it also undoubtedly has "an interest in resolving individual cases efficiently." Walsh, 7 F. Supp. 2d at 528 (granting pre-indictment stay, in part because "[w]ithout a stay, interrogatory and deposition discovery would likely cause inefficiency, because several defendants [would] be forced to assert Fifth Amendment privileges"). If the instant proceedings are not stayed, then Paradis's invocation of the Fifth Amendment in response to creditors' questions will likely result in protracted litigation with respect to privilege issues, thereby resulting in inevitable delays. Indeed, the first such delay has already taken place following Paradis's refusal to answer many of the questions posed at the initial 341(a) meeting.

While the government cannot — publicly or otherwise — predict with precision when the federal criminal investigation will be completed, that lack of certainty can be mitigated by the government's offer to provide a status update after 180 days, or allowing the parties to petition the Court to lift or modify the stay once circumstances have materially changed. Either way, the government respectfully submits that the efficiency gained by imposing the stay will outweigh the prejudice of any resulting delay.

**F. A stay of the proceedings is critical for the preservation of the integrity of the government's ongoing criminal investigation**

As noted above, the government has a significant interest in the stay of these bankruptcy cases to protect the integrity of its

continuing investigation.  It is beyond dispute that "[t]he United States' interest in an unimpeded criminal investigation favors a stay."  Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 532 (S.D. W. Va. 2005).  Even in cases where the government is not a party, it has "a discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in [a related] criminal matter."  SEC v. Chestman, 861 F.2d 49, 50 (2nd Cir. 1988); see also Dresser, 628 F.2d at 1375-76 (noting that prejudice to a criminal case might result from the availability of broader discovery in the parallel civil action).

Here, debtor Paradis likely has substantial sensitive information related to the federal criminal investigation -- the forced public revelation of which would be highly detrimental to the integrity of that investigation.  The overlap between the government's investigation and the areas of interest to Paradis's and Ardent's creditors creates a direct conflict between the bankruptcy cases and the federal criminal investigation, such that any testimony in the bankruptcy cases touching on the areas of overlap will have some level of negative impact on the federal criminal investigation.  Thus, permitting the bankruptcy cases to continue in light of these conflicting interests would not only likely interfere with the federal criminal investigation, but would also jeopardize the public interest in the prompt and efficient resolution of criminal matters.[2]

---

[2] To the extent that the Court may wish to hear additional details concerning the federal criminal investigation, the United States requests the opportunity to make an in camera showing to the Court.

### G. The public has a greater interest in seeing that any criminal activity is expediently investigated than in advancing the instant bankruptcy cases

The public interest in uncompromised criminal investigations likewise weighs strongly in favor of a stay. See Baker v. SeaWorld Entm't, Inc., 2018 U.S. Dist. LEXIS 60958, 2018 WL 1726534 at *3 (S.D. Cal. Apr. 10, 2018) ("The government has a strong interest in maintaining and protecting the integrity of its criminal investigation, and a stay would prevent premature disclosure of criminal discovery materials.") This is particularly true here, wherein the alleged illegal conduct relates to interests that were asserted on behalf of a class of up to four million LADWP ratepayers. In contrast, the public's interest in the swift progression of Paradis's and Ardent's bankruptcy cases is minimal.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court stay the instant bankruptcy cases until the conclusion of the federal criminal investigation.